**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2494
_____

FERNANDO FERNANDEZ DOMINGUEZ,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A023-324-819)
Immigration Judge: Lisa de Cardona

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 15, 2019
Before: GREENAWAY, JR., RESTREPO and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 8, 2019)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Fernando Fernandez Dominguez, a native and citizen of the Dominican Republic, petitions for review of a final order of removal. For the following reasons, we will deny the petition.

Fernandez Dominguez has a long history in the United States, the details of which are documented in the administrative record and detailed in the decisions of the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA"). Because the parties are familiar with the record, we provide only a brief summary here. Fernandez Dominguez entered the United States in 1973 as a temporary visitor and became a lawful permanent resident in 1980. In 1992, he pleaded guilty in the United States District Court for the District of New Jersey to conspiracy to distribute and to possess with intent to distribute cocaine (21 U.S.C. § 846). In light of his substantial assistance to United States law enforcement, he received a downward departure at sentencing and was sentenced to fifty-one months. He was placed in deportation proceedings. The agency determined that he had been convicted of an aggravated felony and controlled substance violation and was found removable as charged. Pursuant to a 1994 final removal order, Fernandez Dominguez was deported to the Dominican Republic.

In 1999, and again in 2004, Fernandez Dominguez was paroled into the United States to act as an informant for the Drug Enforcement Administration ("DEA"). He worked as part of the inner circle of drug gang operatives and then provided advance information to his DEA handler and other agents on large-scale scheduled drug trafficking activities, assisting in the capture of several specific targets. His parole in 2004 was for a one-year period, but he has remained in the United States since then.

In 2017, Fernandez Dominguez was arrested by immigration authorities. He was charged with removability as an alien without a valid immigrant visa or entry document, 8 U.S.C. § 1182(a)(7)(A)(i)(I). He conceded removability but applied for withholding of removal under 8 U.S.C. § 1231(b)(3) and withholding or deferral of removal under the Convention Against Torture ("CAT"), see 8 C.F.R. § 1208.17(a). He based his claims for relief on his fear of retaliation by a number of named Dominican drug criminals, in light of his role in aiding their prosecutions. He testified before an Immigration Judge ("IJ") as to the specifics of his cooperation and his fears of harm, along with reasons why he believes that Dominican law enforcement officers are corrupt and would not protect him.

In a written decision following the evidentiary hearing, the IJ denied relief. The IJ found that Fernandez Dominguez credibly testified and reasonably corroborated his claim. However, the IJ found that Fernandez Dominguez was statutorily ineligible for withholding of removal under § 1231(b)(3) and under the CAT in light of his prior conviction of a "particularly serious crime." Regarding CAT deferral relief, the IJ found that Fernandez Dominguez has a subjectively reasonable fear of future torture. Further, the IJ acknowledged the pervasive corruption of security officials in the Dominican Republic, and found that non-government actors would be able to find corrupt law enforcement officers who would be complicit in torture or exercise willful blindness to torture. However, the IJ concluded that Fernandez Dominguez did not establish that it was more likely than not that the individuals in the Dominican Republic whom he fears will know of his return to the country, will hold him responsible for their prosecutions in

3

the United States, and will have the means to bribe officials to consent to or acquiesce to his being tortured at their hands.

The Board of Immigration Appeals ("BIA") dismissed Fernandez Dominguez's appeal. As the BIA noted, Fernandez Dominguez did not appeal from the denial of withholding of removal under the Act and under the CAT. Concerning his request for deferral of removal under the CAT, the BIA found no clear error in the IJ's determination that Fernandez Dominguez had not shown that it was more likely than not that he would be harmed if he returns to the Dominican Republic. Fernandez Dominguez timely filed a pro se petition for review.

We generally lack jurisdiction to review a final order of removal against a criminal alien, like Fernandez Dominguez, who is removable for having committed an offense covered in § 1227(a)(2). See 8 U.S.C. § 1252(a)(2)(C). We retain jurisdiction under § 1252(a)(2)(D) to address colorable constitutional claims and questions of law. Green v. Att'y Gen., 694 F.3d 503, 506 (3d Cir. 2012). With respect to CAT claims, the question of the likelihood of torture is a mixed one, comprised of a factual component ("what is likely to happen to the petitioner if removed") and a legal one ("does what is likely to happen amount to the legal definition of torture"); only the latter is reviewable under § 1252(a)(2)(D). Kaplun v. Att'y Gen., 602 F.3d 260, 271 (3d Cir. 2010).

Fernandez Dominguez argues that the BIA incorrectly used a clear error standard, rather than a de novo standard, when reviewing the IJ's decision on the question of whether it was more likely than not that he would be tortured upon his return to the Dominican Republic. In reaching her decision, the IJ made subsidiary factual findings

4

that Fernandez Dominguez had not shown that the individuals he fears would more likely than not be aware of his return, that they would know about his role in their prosecutions, or that they would have the means to harm him. In finding that Fernandez Dominguez did not meet his burden of proof in establishing that each step in the hypothetical chain of events would more likely than not occur, the IJ's denial of CAT relief was based on factual findings. The BIA properly reviewed these factual findings for clear error. See 8 C.F.R. § 1003.1(d)(3)(i); Kaplun, 602 F.3d at 271-72.

Fernandez Dominguez contends that the IJ failed to discuss the most significant facts in making the above factual determinations. See Cham v. Att'y Gen., 445 F.3d 683, 693 (3d Cir. 2006) ("Due process demands that an immigration judge 'actually consider the evidence and argument that a party presents.'") (citation omitted). Specifically, Fernandez Dominguez contends that the IJ's decision omitted significant facts concerning his recent housemate "Ledwin" and Ledwin's associate "Elvis." Fernandez Dominguez stated that they were drug traffickers, and that Elvis went into hiding because he owed a certain drug supplier money. The supplier eventually did find Elvis, without Fernandez Dominguez's help, but Ledwin and Elvis nonetheless blamed him for providing Elvis's location. Fernandez Dominguez averred his belief that, as revenge, Ledwin and Elvis were responsible for his arrest by immigration authorities, that they have reason to have him killed, and that Ledwin has ties to corrupt police officers in the Dominican Republic. We disagree with Fernandez Dominguez's contention. The IJ's decision reflects that the above information about Ledwin Batista and Elvis Hernandez was noted and considered within the context of his CAT claim. (See, e.g., A.R. 61-62, 65, 71-73.)

5

Fernandez Dominguez also asserts that the BIA failed to address his argument that the IJ failed to consider his testimony about how the individuals he fears would know about his informant status and about his presence in the Dominican Republic. He points to no particular testimony in his brief, but in his brief to the BIA he referred to pages 78-80 of the hearing transcript. Upon review, it is apparent that the IJ accounted for the information presented in that portion of testimony, along with other testimony on the topic. For instance, the IJ noted Fernandez Dominguez's testimony that certain individuals would have been suspicious about how he was able to return to the United States in 1999, via air travel, after his deportation in 1994 (see A.R. 60), and about why, after he and others had been arrested in a DEA operation, he was the only one who did not face prosecution (see A.R. 61). Further, the IJ acknowledged Fernandez Dominguez's testimony that certain individuals would be able to locate him in the Dominican Republic through family connections, and that he has become aware that he is being blamed for having sent certain individuals to prison (see id.). Thus, contrary to Fernandez Dominguez's contention, it appears that the IJ did not fail to consider his testimony; by acknowledging the IJ's factual findings in considering the entirety of the record, the BIA did not fail to address Fernandez Dominguez's argument in that regard. See Huang v. Att'y Gen., 620 F.3d 372, 388 (3d Cir. 2010) (the IJ and BIA need not "discuss every piece of evidence" presented by an applicant).

As for his argument that the BIA misunderstood the facts of the case and committed legal error thereby, Fernandez Dominguez points to the BIA's reference to the individuals he fears as his "associates," when in reality, he was merely posing as their

6

associate while working as an informant.  This argument has no merit, as the BIA both recognized Fernandez Dominguez's "role as a confidential informant in the United States" and cited the IJ's detailed account concerning Fernandez Dominguez's various activities in his informant relationship with the DEA.  (A.R. 3.)

We have considered Fernandez Dominguez's arguments and discern no due process failure or other legal error.  Accordingly, we will deny his petition for review.